My name is Thomas E. Frankovich. I represent the appellate, Jarek Molski. I found in these type cases, which are not necessarily favored by the court, that it's probably better that I get a quick summary of what the issues are here and then entertain questions and save about eight minutes for rebuttal. We believe that the weight of the evidence is such that it shows that architectural barriers existed at Cable's restaurant, that Cable's failed to identify and remove those. In order for the plaintiff to preponderate, there's three criteria. They'd be a person with a disability. Second, that the entity, this would be Cable's, is a public accommodation. Those first two issues were stipulated to. The third issue then that would be before the court, before the jury, is that the barriers exist and that they're readily achievable to remove. The barriers in this case, as testified to by the expert, were the height of the paper towel rack, the insulation of the pee trap, the toilet configuration not being at the right height, the fact that there was not a rear grab bar and not a side grab bar to assist a person in a wheelchair to be able to make a transfer from the wheelchair to the toilet, that the area of the stall was not sufficiently large enough to also accommodate that, that there wasn't any restroom signage, that the door pressure was excessive, and that the urinal was not accessible. Now, Jarek Molsky testified that many of those architectural barriers existed on the three occasions that he was there. Well, I've read the record and read the brief. Tell me if the following understanding which I have as a result of doing that is correct or incorrect or needs to be expanded or retracted in some way. My understanding is at the trial that Mr. Molsky put on evidence both through witnesses and through his personal testimony and through an expert of deficiencies in the lavatory facilities at this restaurant, correct? That's correct. And my understanding also is, and maybe I've missed something and I can be educated from the other side, is that no evidence of any kind was offered by the defendant to rebut the noncompliance. That's correct. That the defense case consisted almost entirely of the financial difficulties of compliance. That's not correct. Okay, correct me on that. There was testimony by our construction expert that the total cost of remediation was $6,000. No, I'm talking about just the defense. I'm not saying whether they were right, wrong, or indifferent. I'm saying what did the defense consist of? We know it didn't consist of saying you're wrong. These were perfectly compliant. The defense basically was that Jerick Molsky was not an individual within the ADA but a business. Coming back to the question you posed on the financial, just to have it clear here, our expert testimony by the construction expert was that it was $6,000 to completely make the restroom accessible. Mr. Dahlkos, the vice president, testified that they did have the financial wherewithal to do it. And he also testified, it's in the record, that they would not do it unless compelled. I wasn't trying to say they were right or wrong about what defense they did put on or whether you rebutted it or not, just what their defense consisted of. And it consisted of, from their point of view, the difficulties in getting into compliance. Correct? No, that he was not an individual with a business. They did not have... In any event, it had nothing to do with whether the facilities were in compliance or not. That's correct. Okay. I'm sorry. And just the last question. It went to the jury on a special verdict. The question, first question was, is it compliant? And they said, yes. No, the first question was, do you find that defendant failed to identify and remove the architectural barriers at Cable's Restaurant? And they said... And they said, no. Okay. And that was it. They stopped there. They stopped there. They went no further. And our position is the overwhelming weight of the evidence is that there were architectural barriers there. They admitted there were architectural barriers. It was readily achievable to do. And that the only reason that the jury came back with a no is that they were basically, you know, prejudiced by the argument. I mean, Mr. Molsky has, you know, 300 lawsuits. Is that he's a business and not an individual? So with that, I'd like to entertain, you know, some of the questions or possibly give this panel some of the background of, some of the background that's kind of led to this case. I mean, the issue like the number of cases that he's filed, that currently is in the Ninth Circuit in the case of Molsky. You know, I can't speak for the other judges on this panel, but I am not bothered a whit by whether this man has filed one or 3,000 suits. It's irrelevant to the facts of this case. All right, Senator. Essentially, the restaurant's defense was they just never got around to it, wasn't it? Isn't that what it amounted to? They said they could afford it, and they just didn't get to it. It was not compliant. I guess in so many words. Now, it's my understanding that subsequently that they've done repair work, and they did indicate that they were going to do a remodel at some time. But, you know, access delayed is access denied. Yeah, I think we've got your argument. You've got plenty of time for rebuttal. Let's hear from the other side. Thank you. Good morning, and may it please the Court. Good morning. I am Craig Beardsley on behalf of MJ Cables, the appellate. Why don't you start by telling the panel what evidence your client put on at trial to show that the facilities at the time they were observed by Mr. Molsky and these other folks were compliant? I don't believe during the course of the trial there was evidence relating to the compliance. There was a lot of discussion relating to remodel. There was a lot of testimony relating to problems with landlords for this remodel. And there was testimony relating to the concept that one was not going to remodel these bathrooms because it's in a confined space. It's a leased space without blowing out walls and completely remodeling this place. And that's as far as it got, because what had happened was is that, and the testimony was relating to a particular paragraph in a lease that basically said, we could buy you out. And the concept was if you were going to go to remodel, how much money were you going to spend, and then have, because the landlord was thinking of turning this into some kind of office complex. You know, if this had gone to the jury on a general verdict, no special interrogatories of any kind, and you had prevailed, it would be a pretty straightforward affirm. The problem is, is that you read this record, there's not a shred of evidence, not an iota of evidence to suggest that the stuff was in compliance. And all of the evidence put on by the plaintiff showed that the restroom was not in compliance. To respond to that, I have to step back and look at how this case was tried and how the case has been in the state court. And keeping in mind, this was not an ADA case as we classically know it under the ADA. This is a California case, state law case. Under the Unruh Act. Under the Unruh Act, correct. And if we were in a state court, and we presented this special verdict form and the jury instruction to Judge Trevisian in the district court level, and that is set forth in our brief, and that is the only instruction that exists in the state of California under KC, and it's 3010 if I'm not mistaken, and that's the instruction and 3020 I think is the jury verdict form, the problem would have been solved. I agree with you. Exactly. Because that was the first issue the court or the jury had to decide. So now I'll explain how we get here. Judge Trevisian prepared this special verdict form. And I think Mr. Frankovich would agree that we were not given much opportunity to address its contents. This was it. This is how it's going to be. Well, we tried, but both sides actually had some issues. We didn't get anywhere. This is how the verdict form was going to be. I had asked specifically for the verdict, the very first question would be, had he been discriminated against? And that is KC. That is the only instruction that you have, or jury verdict form. It just didn't come about. So what happened? Let's step back just even further. We have an entire series of jury instructions read to a jury about ADA and the UNRU Act, citing it verbatim, on and on about discrimination against individuals. All of these instructions basically, conceptually, would have been irrelevant if the only question was compliance with the ADA or ADAG guidelines. All of those instructions would be irrelevant. Why even have them? It's irrelevant. But no, those instructions are relevant because this was an UNRU case. And so when both counsel got up, Mr. Frankovich and I, we tried this case. And when we both argued this case, we went through this jury verdict form, question by question. But the very first question was the one that both Mr. Frankovich and I concentrated on. And that was the question that came out in effect to be this jury question that was never asked. Was Mr. Molsky discriminated against? And Mr. Frankovich went through it, said the same thing. He was discriminated against. And you find that, and we start down that thing. Yes, yes, yes, yes, yes. And it was my turn. And in the closing argument, I went through the thing about being individuals, individual, individual. And you come to that first question. And I said, no objections, mind you, are being made by anybody. Not Mr. Frankovich, certainly not Judge Trevisian. And I said, if you come to the conclusion that Mr. Molsky has not been discriminated against, he's not an individual, not been discriminated against, you check no. And at that point, you have nothing further to do. Now, again, all of this would have been nicely handled had we had this other verdict form, or at least I should say the very first question. And subsequently to this case, Mr. Frankovich and I have had other cases. And that question, I have fought vigorously to have that question put there at the very first one. But to get a new trial, you can do that in this case, right? Well, that could be. But I personally, we ended up with the result that we thought we should be getting in the sense of the very first question being, was he discriminated against? Your argument is this wasn't an ADA case? Well, the ADA aspect was the injunctive relief. And that was actually So the claim was brought both under the ADA and UNRRA, right? Correct. Correct. And it was separated up. Judge Stravesian said he had handled the ADA injunction part separately, didn't think a jury was entitled to a jury there. So we just did the UNRRA case at the beginning, which made sense at the time. It certainly short-circuited things. But the entire case from the defense standpoint for the trial was on the very first question relating to whether or not Mr. Mulski was discriminated against. Was he an individual? Was he an individual? Correct. That's correct. And that was the position taken, and it went through the entire trial. Unfortunately, like I said, the only way that point could have been answered, because of the way the jury verdict form came out, was at the very first question. And that was my form, just like Mr. Frankovich did. If you get to that question, and you find that he has not been discriminated against, he's not an individual, you check no. And apparently that's what they did, and it was a unanimous result. I don't know if I can answer any other questions. I don't see any. Thank you. Rebuttal? This was an Americans with Disabilities Act case with the court taking supplemental jurisdiction under Civil Code Section 51, where we look for damages under 52A. The reason that the special verdict was there is that the court wanted the jury to make a determination as to what were the architectural barriers that existed. That's why we went through the whole litany of architectural barriers. And that's why the jury instructions were so voluminous. But the point is, with the first two stipulations, what the preponderance of the evidence is, the only thing that we needed to prove is that the barriers existed, and that they were readily achievable to move, meaning without great difficulty or expense. Cables was approved as a preexisting restaurant built prior to the Americans with Disabilities Act of 1990. So what the Americans with Disabilities Act says under the readily achievable test, you don't have to build a brand new restaurant. You have to do those things that are readily achievable to do, that you yourself can do. They haven't got to that question, though. No, but I'm just explaining how it works. One of the first things, because we're talking about a remodeling landlord, how difficult would it be to raise the toilet 17 to 19 inches? Evidence was it hadn't been done. How difficult would it be to put in a 42-inch grab bar on the side, a 32-inch in the rear? Hadn't been done. How hard is it to go to Home Depot, buy the insulation, and put it under the pipe? Not very difficult. And these are, if you go to 36.304B, these are the examples of the DOJ of those things that are easy to do. Forget about money. These are easy to do. Same thing with putting the levered hardware on the sink. So when you go down through this whole litany, these were all things they could have done. The only thing that they may have had to wait for, if you want to buy off on the landlord argument, which there was very little of, is making the stall even bigger. So the weight of the evidence from Molsky, the expert, the construction expert, and Mr. Dalkus himself, the Vice President, is he wasn't going to do it until he was compelled to. And I argued to the jury, the Vice President has said he's not going to do it until he's compelled to do it. The court is the one that makes the determination as to the injunctive relief. And that's what Judge Trevisan was going to do. He was going to make a determination at the end, what injunctive relief, if any, he was going to order. But he's going to let the jury make the determination regarding the existence of barriers. Molsky, by definition, is discriminated against when he goes into a place of public accommodation and encounters architectural barriers. End. There's no intent issue here. There isn't any. It becomes that simple. Their defense has to be that it's not readily achievable to do anything. And if they have that defense, they win. Thank you both for your argument. Very interesting case. We'll be submitted for decision. We're going to take a short five, eight minute break. If the counsel will be ready on the last case, Amerisource Bergen Corporation v. Roden. We'll catch that one when we come back. Thank you. Thank you. Thank you.
judges: Ferguson, Siler, Hawkins